**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DARRYL JAMES,             )
                                )
               Plaintiff,       )
                                )
             v.            )       02:03cv0944
                                )
JOHN E. POTTER, POSTMASTER   )
GENERAL, U.S. POSTAL SERVICE,  )
                                )
             Defendant.    )

**MEMORANDUM OPINION AND ORDER OF COURT**

March 30, 2006

       Presently before the Court for disposition is the MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendant, John E. Potter, Postmaster General, U.S. Postal Service (*Document Nos. 24 and 25,* respectively), and the brief in opposition filed by Plaintiff, Darryl James (*Document No. 28*).  After careful consideration of Defendant's motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that there is not sufficient record evidence upon which a reasonable jury could return a verdict for Plaintiff, Darryl James, on his claims of discrimination based upon his race, physical disability, and retaliation.  Therefore, the Court will grant the motion for summary judgment of Defendant, John E. Potter, Postmaster General, U.S. Postal Service.

**PROCEDURAL BACKGROUND**

       Plaintiff filed this civil rights action on June 24, 2003, in which he alleges that his manager at the United States Postal Service, Thomas Graf ("Graf"), discriminated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

Specifically, Plaintiff alleges that he was refused "light duty" work based upon his race (African American); physical disability (10% veteran's disability); and retaliation (for filing an Equal Employment Opportunity claim in 1998).

Defendant has filed the instant motion for summary judgment, in which it contends that Plaintiff is unable to establish a *prima facie* case on any his claims.   Plaintiff has filed his brief in opposition to the motion for summary judgment.   The matter is ripe for disposition.

### BACKGROUND

The facts relevant to this discussion, and viewed in the light most favorable to Plaintiff, are as follows. Plaintiff has been a full-time employee of the Postal Service since 1994 and works as a laborer/ custodian at the General Mail Facility ("GMF") in Pittsburgh, Pennsylvania.   Prior to his employment with the Postal Service, Plaintiff served in active duty in the United States Air Force from 1979 through 1992.   He received an honorable discharge and a 10% veteran's disability rating based on his service-connected condition of hypertension.

On October 22, 1998, Plaintiff was given notice of a seven (7) day suspension for his failure to meet the attendance requirements of his position from his immediate supervisor, Wallace Root.   In response, on November 30, 1998, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint against his senior manager, Graf.   Plaintiff claimed that the suspension was the result of "unequal treatment" because a white friend allegedly had poor attendance and was not placed under suspension.

Plaintiff's EEO claim was settled at mediation.   The parties agreed that if Plaintiff had no more than three unscheduled absences for a ten-month period his suspension would be

2

removed from the Postal Service records.  The summary judgment record reflects that Plaintiff

fulfilled the terms of the agreement and the suspension was removed from his file.

Plaintiff's next major incident with the Postal Service management occurred in June,

2002.  During this time, Plaintiff was assigned as a laborer/ custodian on Tour 1, which is the

night shift.  Plaintiff was responsible for general cleaning, grass cutting, snow removal, and

furniture assembly at the GMF.  In February 2002, Plaintiff complained of a sensation in his

groin, which was later diagnosed as a hernia, and was scheduled to have surgery on June 16,

2002.

As a result of his hernia condition, Plaintiff requested and was granted a series of

"light duty" assignments from February 2002 to June 2002.  After thirty (30) days on light duty,

Plaintiff was required to renew his request for additional light duty assignments.[1]  On June 25,

2002, Plaintiff reported to work but his light duty authorization had expired.  Plaintiff showed

Graf a doctor's excuse that was very restrictive and stated that Plaintiff "could not sit, stand,

walk, bend, or lift great[er] than five pounds."  Graf told Plaintiff that his restrictions, as noted

by his physician, had become so severe that Plaintiff could not be approved for a light duty

assignment.  Further, Graf noted that Plaintiff had failed to obtain a valid medical excuse from

the Postal Service's medical unit, as required by Article 13 of the Collective Bargaining

Agreement.  As a result, Graf sent Plaintiff home with instructions to follow the "call off

---

[1]     The light duty program is a creation of the Collective Bargaining Agreement.  Most
light duty assignments are temporary.  Prior to being placed on light duty work, an
employee must submit appropriate paperwork and medical documentation that
supports the light duty request.  The paperwork includes a medical excuse from the
Postal Service's medical unit in addition to the excuse from the employee's
personal physician.  See Exhibit A, Article 13 of the Collective Bargaining
Agreement.

procedures until he ha[d] approved light duty or could return to full duty."  Plaintiff was absent from work for the next several days and took leave without pay because he did not have any accumulated leave left.  The lack of leave caused Plaintiff to cancel his hernia surgery.[2]

On June 30, 2002, Plaintiff reported back to work.  His physician modified his restrictions to be less severe, but Plaintiff continued to fail to obtain the appropriate light duty documentation from the Postal Service's medical unit.  Therefore, Graf, again, sent him home.

Plaintiff then commenced a one-year leave without pay status and collected unemployment.[3]  Plaintiff had his hernia surgery in June 2003 and reported back to work at the Postal Service in July 2003, cleared by his personal physician to full unrestricted duty.

On August 9, 2002, Plaintiff filed a formal EEO complaint in which he alleged various grounds of discrimination stemming from the denial of light duty assignment.  The matter was fully investigated and on March 26, 2003, a final decision was issued in favor of the Postal Service.  On June 23, 2004, Plaintiff filed the instant lawsuit.

## STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[2]    The record reflects that Plaintiff had requested "advance sick leave" in order to have the surgery, but this request was denied by the Postal Service because of "Plaintiff's poor leave record and his failure to maintain enough leave as 'an insurance policy' to protect him in emergency situations."  Def's Mot. at 6, n. 4. Plaintiff later filed a formal grievance over the denial of his advance sick leave, which grievance was settled by the Postal Service approving Plaintiff for 240 hours of sick leave.

[3]    The dates of Plaintiff's one year leave of absence ran from June 25, 2002 through July 27, 2003.  Plaintiff collected unemployment compensation from August 2002 through July 2003.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249)). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id.* (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

## DISCUSSION

As stated above, Plaintiff claims that he was denied light duty work because of his race, physical disability,[4] and retaliation in violation of Title VII. Defendant responds that its decision not to assign Plaintiff to light duty work was based on legitimate, nondiscriminatory reasons. The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory

---

[4]      As Defendant correctly notes, Plaintiff's disability claim is improperly brought pursuant to Title VII. Plaintiff's disability claim should have been brought pursuant to the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791. The Court will therefore, analyze Plaintiff's claim under the Rehabilitation Act of 1973.

purpose. *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 526-27 (3d Cir. 1992), *cert. denied*, 510 U.S. 826 (1993).


A.      <u>*Race Discrimination*</u>

_____Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." 42 U.S.C. § 2000e-2(a)(1).  Thus, a court's ultimate task in a race discrimination case is to determine whether the plaintiff has carried his burden of showing, by a preponderance of the evidence, that the employer intentionally discriminated against him.  *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir.1993); *see Bellissimo v. Westinghouse Elec. Corp.*, 764 F.2d 175, 179 (3d Cir.1985) ("[A] plaintiff must show that his status as a minority class was the but for reason for the treatment accorded."), *cert. denied*, 475 U.S. 1035 (1986).

_____In a Title VII lawsuit, the familiar *McDonnell Douglas* formulation[5] regarding the appropriate burdens of proof and allocation of production of evidence govern and guide the analysis of the evidence presented on a motion for summary judgment.   Accordingly, the plaintiff bears the initial burden of presenting a *prima facie* case by demonstrating that (1) he is a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment decision; and (4) others not in the protected class were treated more favorably. *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir. 1994) (*citing McDonnell Douglas*, 411 U.S. at 802).  Should the plaintiff make this showing, a presumption of discrimination is created and

---

[5]      *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its

decision. *Fuentes*, 32 F.3d at 763; *Weldon v. Kraft, Inc*., 896 F.2d 793, 797 (3d Cir. 1990).

_____The employer need only produce sufficient evidence to enable a factfinder to

conclude that the action taken was motivated by a nondiscriminatory purpose. *Fuentes*, 32 F.3d

at 763.  If the defendant is able to clear this relatively low hurdle, the presumption evaporates

and the onus is again on the plaintiff, who bears the ultimate burden of showing that a

discriminatory purpose was a determinative factor in the decision. *Id*. at 764; *Bellissimo*, 764

F.2d at 179-80.  The plaintiff can either prove this directly, by showing that discriminatory

considerations motivated the defendant's actions, or indirectly, by showing that the rationale

provided by the defendant is unworthy of credence. *Josey*, 996 F.2d at 638; *Weldon*, 896 F.2d

at 797.

_____At trial, a Title VII plaintiff must prove both that the employer's reason was false and

that discrimination was the real reason for the discharge. *Fuentes*, 32 F.3d at 763.  However,

the Court of Appeals for the Third Circuit has held that the plaintiff's burden is not as onerous

when attempting to survive a summary judgment motion.  In such situations, the plaintiff need

only demonstrate that there are disputed factual issues concerning either (1) whether the

proffered reason for the discharge is false, or (2) whether an invidious discriminatory reason

was more likely than not a motivating or determinative cause for the discharge. *Torre v. Casio*,

*Inc.,* 42 F.3d 825, 830 (3d Cir. 1994); *Fuentes*, 32 F.3d at 764.

_____For purposes of this decision, the Court will presume that Plaintiff has met his *prima*

*facie* case.  Therefore, the burden shifts to Defendant to articulate some legitimate,

nondiscriminatory reason for its decision.  Defendant argues that legitimate reasons exist for its

decision not to assign Plaintiff to light duty.  Namely, that Plaintiff always had the option of applying for light duty provided that he follow the appropriate Postal Service procedures, which by his own admission he did not do.  The Collective Bargaining Agreement specifically provides that prior to an employee being placed on light duty, the employee must provide a medical excuse from (i) the employee's personal physician and (ii) the Postal Service's medical unit.

Plaintiff testified during his deposition that on June 25, 2002, he did not have a current or valid temporary light duty excuse from the Postal Service's medical unit, "I mean, I just - - you know , I said - - or realized that my excuse was not valid or had expired, and I knew how it came to be like that, with the anticipation that the advance would be approved and the surgery would take place."  The record reflects that, under the Collective Bargaining Agreement, Defendant could not place an employee on light duty if that employee did not produce an excuse from the Postal Service's medical unit.  Accordingly, Defendant has produced a legitimate, non-discriminatory reason for its decision not to assign Plaintiff to light duty work

Because Defendant has articulated a legitimate, non-discriminatory reason for its decision not to assign Plaintiff to light duty work, the onus shifts back to Plaintiff to show, by a preponderance of the evidence, that Defendants' stated explanation is pretextual. *Fuentes*, 32 F.3d at 763.

The Court, however, finds and rules that the record upon which summary judgment is to be determined is utterly devoid of any evidence which demonstrates that Plaintiff's race was a factor in Defendants' decision not to assign Plaintiff to light duty work.  Plaintiff offers

no statement, pattern of treatment, or any other indicia of race discrimination.  Plaintiff relies upon his own "unsupported assertions, conclusory allegations, or mere suspicions."

Therefore, the Court will grant the summary judgment motion filed by Defendant on Plaintiff's claim of race discrimination.

B.   _Disability Discrimination_

The Rehabilitation Act of 1973 prohibits federal agencies from discriminating against their disabled employees in matters of hiring, placement, or advancement.  29 U.S.C. § 701, _et seq_.  To establish a violation of the Rehabilitation Act, a plaintiff must first establish a _prima facie_ case of discrimination, _to wit:_  (i) he or she has a disability, (ii) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer, and (iii) that he suffered from an adverse employment action because of his or her disability.  _Shiring v. Runyun,_ 90 F.3d 827, 831 (3d Cir. 1996).[6]

Defendant argues, _inter alia,_ that Plaintiff does not suffer from a "disability" as that term is defined nor can he demonstrate that he was "otherwise qualified" to perform the essential functions of light duty work,  and, thus, his disability claim necessarily must fail.

---

[6]   The standards used to determine whether the Rehabilitation Act of 1973, as amended, has been violated are the same standards as applied under the Americans with Disabilities Act.  See 29 C.F.R. § 1614.203

A "disability" is defined as:

(A)     a physical[7] or mental impairment that substantially limits one or more of the major life activities of such individual;

(B)     a record of such impairment; or

(C)     being regarded as having such impairment.

42 U.S.C. § 12102(2); *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 193

(2002).   As neither the allegations nor arguments of Plaintiff address the second or third prongs

of the definition of disability, the disposition of the present motion depends upon whether

Plaintiff has established sufficient evidence for any reasonable jury to conclude that he suffers

from a physical or mental impairment that substantially limits one or more of his major life

activities.  *Toyota Motor*, 534 U.S. at 195 (citing 42 U.S.C. § 12102(2)(A)).

Neither the Rehabilitation Act nor the Americans with Disabilities Act ("ADA")

specifically define "major life activities."  However, the EEOC regulations define the term as

those activities that are of "central importance to most people's daily lives." 45 C.F.R. §

84.3(j)(2)(ii); *Toyota Motor*, 534 U.S. at 197.  This means "functions such as caring for one's

self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and

working." 45 C.F.R. § 84.3(j)(2)(ii).  The Court of Appeals for the Third Circuit has "held only

extremely limiting disabilities - in either short or long-term -- qualify for protected status . . . ."

*Marinelli v. City of Erie, Pennsylvania*, 216 F.3d 354, 362 (3d Cir. 2000).

---

[7]     A "physical impairment" is "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems:  neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin and endocrine."  29 C.F.R. § 1630.2(h).

In *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999), the United States Supreme Court stated that:

> A "disability" exists only where an impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken. A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently "substantially limits" a major life activity. To be sure, a person whose physical or mental impairment is corrected by mitigating measures, still has an impairment, but if the impairment is corrected it does not "substantially limi[t]" a major life activity.

*Id.* at 482-83.

The Court finds and rules that the summary judgment record is void of any evidence that Plaintiff's hypertension condition constitutes a "disability." For example, during his deposition, Plaintiff testified that his hypertension condition was treated with medication and, as long as he continued to take this medication, "everything's fine." Pl's Depo. at 15. He further testified that his daily life activities were not affected; he has no trouble driving, showering, or generally taking care of himself; and does not have any problems seeing, hearing, or speaking. *Id.* at 15 - 16.

Also during his deposition, when asked whether Graf discriminated against him based upon his disability, Plaintiff replied "I don't know . . . he refused to acknowledge my injury." Ex. B at 66.

Moreover, during discovery, Plaintiff responded to the following interrogatory question - "[i]dentify each and every major life activity that you cannot perform and/or can only perform in a substantially limited way because of your physical or mental impairment or

disability" - by simply responding that he "has fully recovered and was cleared for return to full

unrestricted duty by his physician on July 23, 2003." Ex. A at 57, 58, 60, 61.

Plaintiff clearly fails to present any record evidence sufficient to meet the first

element required to establish a valid disability claim.  Therefore, the Court will grant the

summary judgment motion filed by Defendant on Plaintiff's claim of disability discrimination.

c.      *Retaliation Claim*

In order to prevail on his retaliation claim under Title VII, Plaintiff must demonstrate

that: (i) he was engaged in protected activity; (ii) his employer took adverse employment action

after or at the same time as the protected activity; and (iii) there was a causal link between the

adverse employment action and the protected activity.  *Farrell v. Planters Lifesavers Co.*, 206

F.3d 271, 279 (3d Cir. 2000).

In order to meet the first prong of his retaliation claim, Plaintiff must show that he

engaged in protected activity.   Plaintiff filed a complaint with the Equal Employment

Opportunity Commission 1998; thus, Plaintiff has demonstrated that he engaged in protected

activity and has satisfied the first prong of his prima facie case.

Next, Plaintiff must demonstrate that his employer took adverse employment action

against him because of his protected activity.  The United States Supreme Court has defined a

tangible "adverse employment action" as "a significant change in employment status, such as

hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

decision causing significant change in benefits."  *Burlington Industries, Inc. v. Ellerth*, 524 U.S.

12

742 (1998).  Plaintiff alleges that Defendant took adverse employment action against him when he was not approved for light duty work in retaliation for his 1998 EEO filing. Assuming, without deciding that this action qualifies as adverse, the Court finds and rules that Plaintiff has demonstrated the second prong necessary to maintain his retaliation claim.

However, Plaintiff cannot maintain his claim for retaliation because he cannot demonstrate causation,  the third prong.   Adverse action has to occur <u>after or at the same time</u> as the constitutionally protected activity for temporal proximity to be a factor.

First, the summary judgment record demonstrates a substantial length of time between Plaintiff's 1998 EEO claim and the June 2002 denial of light duty, which creates a strong inference of the lack of retaliatory motive.  *See Clark County School Dist. v. Breeden*, 532 U.S. 268 (2001) (twenty-month delay between protected conduct and adverse action suggests lack of causal connection).

Next, the summary judgment record demonstrates that in the nearly four years that separate the two activities, there is no evidence of any instance of antagonism or retaliatory conduct.  In fact, Plaintiff testified that after the 1998 complaint was settled, he and Graf had no "further exchanges" on the issue.  Additionally, it is undisputed that Graf sent Plaintiff home on June 25, 2002, and again on June 30, 2002, because Plaintiff failed to have a valid medical excuse from the Postal Service's medical unit.

The Court finds that on the record before it there is no evidence of retaliatory conduct in the decision of Defendant to not approve Plaintiff for light duty work.  Accordingly, the Court will grant the summary judgment motion filed by Defendant on Plaintiff's claim of retaliation.

### CONCLUSION

For the reasons discussed *supra,* the Court finds that Plaintiff has not shown by any evidence that Defendant intentionally discriminated against him because of his race, physical disability, and/or retaliation.  Therefore, the Motion for Summary Judgment filed by Defendant will be granted in its entirety.  An appropriate Order follows.


McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DARRYL JAMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:03cv0944 |
| | ) | |
| JOHN E. POTTER, POSTMASTER | ) | |
| GENERAL, U.S. POSTAL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER OF COURT**

AND NOW, this 30th day of March, 2006  in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that the

Motion for Summary Judgment filed by Defendant John E. Potter, Postmaster General, U.S.

Postal Service (*Document No. 19*) is **GRANTED** and judgment is hereby entered in favor of

Defendant, Defendant John E. Potter, Postmaster General, U.S. Postal Service.

BY THE COURT:


s/  Terrence F. McVerry
United States District Court Judge


cc:      John G. Burt, Esquire
Email: jburt@nidhog.com

Donna G. Marshall, Esquire
United States Postal Service
Law Department
Email: donna.g.marshall@usps.gov

Ellen M. Fitzgerald,
Assistant U.S. Attorney
Email: ellen.fitzgerald@usdoj.gov

Jessica Lieber Smolar,
Assistant U.S. Attorney
Email: jessica.smolar@usdoj.gov

Paul D. Kovac,
Assistant U.S. Attorney
Email: paul.kovac@usdoj.gov